```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON
```

SCOTT O. CALLAHAN,                )
                                  )
    Plaintiff,                    )    Civil No. 18-389-JMH
                                  )
v.                                )
                                  )
FRANCISCO QUINTANA, ET AL.,       )    **MEMORANDUM OPINION**
                                  )    **AND ORDER**
    Defendants.                   )
                                  )

                    ***   ***   ***   ***

In 2011, Scott O. Callahan was convicted of possessing child pornography, receiving child pornography, and attempting to receive child pornography, in violation of 18 U.S.C. § 2252. *See United States v. Scott Callahan*, No. 8:11-cr-166 (M.D. Fla. 2011). The trial court sentenced Callahan to 210 months in prison. *See id.*

Callahan is now confined at the Federal Medical Center (FMC) in Lexington, Kentucky. Proceeding without a lawyer, Callahan filed a complaint with this Court alleging that the defendants have violated his First Amendment rights. [R. 1]. The defendants then filed a motion to dismiss Callahan's complaint or, in the alternative, a motion for summary judgment [R. 19]. Callahan responded to that motion, and he also filed his own motion for summary judgment. [Rs. 23, 24]. The parties have now fully briefed both motions and, thus, this matter is ripe for a decision. For the reasons set forth below, the Court will grant the defendants' dispositive motion.

I.

Callahan alleges in his complaint that he is an "artist," and he claims that staff at FMC-Lexington are running afoul of his First Amendment rights in three ways.

First, Callahan claims that prison officials unlawfully confiscated some of his "art work" pursuant to a change in institution policy regarding the production of sexual drawings, paintings, writings, and sculptures. [R. 1 at 4-6]. In response, the defendants point out that FMC-Lexington permits prisoners to participate in a "hobby-craft program," but that it prohibits the production of sexual drawings and other depictions. [R. 19-1 at 4 (citing R. 19-2 at 18)].

Second, Callahan claims that prison staff impermissibly seized his mail and returned it to the sender. [R. 1 at 2, 7-8]. In response, the defendants acknowledge that, on multiple occasions in September and October of 2017, prison staff reviewed Callahan's mail pursuant to prison procedures and determined that it contained numerous sexually-explicit photographs. Prison officials determined that the mail was detrimental to the security and good order of the prison and, as a result, it returned the mail to the sender in accordance with prison policies. [R. 19-1 at 3, 4-6 (citing R. 19-3)].

Third, Callahan suggests, albeit in a rather unclear way, that prison officials have somehow interfered with his access to

this Court. [R. 1 at 16]. Callahan stresses that he "enjoys the right to access to courts in order to seek redress for wrongs done to him by the federal government," and he then complains that he has had to "jump through administrative hoops . . . before he can bring an action in court." [*Id.*]. In response, the defendants argue that Callahan has not suffered any prejudice in the way in which he has had to litigate his claims. [R. 19-1 at 19].

Callahan pursued his administrative remedies to no avail and, thereafter, he filed his complaint with this Court. Callahan is seeking both compensatory and punitive damages for the alleged constitutional violations, as well as declaratory and injunctive relief. [R. 1 at 17-18]. In response, the defendants moved to dismiss Callahan's complaint or, in the alternative, moved for summary judgment. [R. 19]. Callahan then filed his own motion for summary judgment. [R. 23]. The parties have now fully briefed both motions and, thus, this matter is ripe for a decision.

## II.

### A.

As the defendants point out, Callahan begins by asserting various First Amendment claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The Court, however, will dismiss these First Amendment *Bivens* claims because they are not legally cognizable.

Unlike a civil-rights claim against state officials under 42 U.S.C. § 1983, which is a remedy explicitly created by Congress, a civil-rights claim against federal officials pursuant to *Bivens* is a judicially-created cause of action that has been implied only in limited circumstances. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court has explained that, in deciding whether a case may proceed under a *Bivens* theory, a court must first determine whether the case presents a new context that "is different in a meaningful way from previous *Bivens* cases decided by this Court." *Id.* at 1859. If the case presents a new *Bivens* context, the court must then consider whether special factors counsel hesitation in recognizing a new *Bivens* claim. *See id.* at 1859-60. Ultimately, the Supreme Court has made it clear that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857 (citation and quotation marks omitted).

Here, each of Callahan's three First Amendment claims present a new context. To date, the Supreme Court has only recognized *Bivens* claims in three contexts: (1) a Fourth Amendment claim involving search and seizure; (2) a Fifth Amendment discrimination claim; and (3) an Eighth Amendment claim alleging a prison official was deliberately indifferent to an inmate's serious medical needs. *See id.* at 1854-55. The Supreme Court has never recognized a *Bivens* remedy in the First Amendment context. *See Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012) ("We have never held that

4

*Bivens* extends to First Amendment claims."); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[W]e have declined to extend *Bivens* to a claim sounding in the First Amendment."); *Meeks v. Larsen*, 611 F. App'x 277, 287 (6th Cir. 2015) (recognizing that the Supreme Court has not extended *Bivens* to First Amendment claims). Thus, Callahan's First Amendment claims clearly present a new context.

A variety of factors also counsel against extending *Bivens* to Callahan's First Amendment claims. For instance, the Supreme Court has noted that the availability of alternative processes for seeking relief may weigh against extending *Bivens*, *see Ziglar*, 137 S. Ct. at 1858, and, here, Callahan was afforded the opportunity to seek relief via the Bureau of Prisons' (BOP's) administrative remedy process. Moreover, extending *Bivens* liability to the First Amendment context would impose substantial costs, in both time and money, upon individual officers and employees of the federal government. *See id.* at 1856. Given that Congress has recognized the need to keep non-meritorious prisoner litigation at bay and passed the Prison Litigation Reform Act in order to do so, the Court is hesitant to permit an implied damages remedy in this case. Just as the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants," *id. at* 1857, this Court refuses to extend *Bivens* to Callahan's claims here. Thus, the Court will dismiss those claims.

B.

To the extent that Callahan also asserts claims that fall outside the *Bivens* context, including claims seeking declaratory and injunctive relief, the Court will grant the defendants' request for summary judgment on these claims.

As an initial matter, it is important to recognize that "[b]ecause of the inherent problems involved in the operations of correctional facilities, prison administrators are afforded great latitude in the execution of practices and policies that 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Goldsmith v. Sharrett*, 614 F. App'x 824, 829 (6th Cir. 2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Thus, "prison administrators, and not the courts, make the difficult decisions associated with day-to-day prison operations." *Goldsmith*, 614 F. App'x at 829 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Along these lines, "an inmate's speech is not protected by the First Amendment if it is 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Goldsmith*, 614 F. App'x at 829 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

With this backdrop in place, the parties agree that, in *Turner*, the Supreme Court set forth the framework for determining when the rights of prisoners must cede to the management of a prison

population. The *Turner* Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Court then said that "several factors are relevant in determining the reasonableness of the regulation at issue." *Id.* First, the regulation must be rationally related to a legitimate government interest. *See id.* Second, the Court considers whether there are alternative means of exercising the right in question. *See id.* at 90. Third, the Court considers the impact that accommodating the asserted constitutional right would have on guards, other inmates, and the allocation of prison resources generally. *See id.* Finally, the Court considers whether there are ready alternatives to the regulation in question. *See id.*

The Court has fully reviewed the record in this case, including the parties' declarations and various other submissions, and it has applied the *Turner* factors to the two policies Callahan challenges: (1) the prison's restrictions on producing sexual drawings and other depictions; and (2) the prison's prohibition on inmates receiving sexually-explicit pictures in the mail. Ultimately, it is clear that prison officials have not violated Callahan's rights.

First, the policies in question are rationally related to a legitimate government interest. The evidence in the record shows

7

that the government's legitimate interest is maintaining a safe and secure prison environment for inmates and staff. [R. 19-4 at 2-3]. The government's policies regarding sexually-explicit material are rationally related to that interest. Indeed, federal courts have repeatedly recognized this point. *See, e.g., Rogers v. Martin*, 84 F. App'x 577, 579 (6th Cir. 2003) (recognizing that a prison policy restricting access to sexually-explicit material is rationally related to the goal of a safer prison environment); *Richards v. Snyder*, No. 1:14-cv-084, 2015 WL 3658836, at *10 (W.D. Mich. June 12, 2015) (the same); *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999) ("The relationship between the possession of sexually explicit materials and the problems sought to be addressed by the policy—sexual harassment of female officers, jail security, and rehabilitation of inmates—is clear."). Moreover, the evidence in the record supports this fact, as the Government thoroughly explains in its motion. [R. 19-1 at 16 (citing R. 19-2 and R. 19-4 and explaining how the production or receipt of sexually-explicit material presents a security risk at the prison)]. Thus, the policies in question are rationally related to a legitimate government interest.

Second, Callahan has alternative ways of exercising his First Amendment rights. Callahan can certainly create art work and receive mail that does not run afoul of the prison's restrictions regarding sexually-explicit material. In other words, Callahan

can exercise his First Amendment rights consistent with his status as a prisoner and the legitimate penological objectives of the corrections system. *See Goldsmith*, 614 F. App'x at 829.

Third, the evidence in the record shows that accommodating Callahan's requests could have a significant impact on guards, other inmates, and the allocation of prison resources generally. As multiple prison officials explained in their declarations, allowing inmates to have unrestricted access to sexually-explicit material can lead to an unsafe environment involving bartering, theft, harassment, and violence. [R. 19-2 at 2-3 and R. 19-4 at 2-3]. Therefore, the third factor also weighs in favor of the defendants.

Fourth, there is no indication that there are ready alternatives to the regulations in question. Simply put, the defendants have demonstrated that the prison's policies regarding sexually-explicit material are reasonable and not an exaggerated response to the institution's legitimate concerns regarding safety and security.

Furthermore, while Callahan has moved for additional discovery in this matter, granting summary judgment prior to formal discovery is not premature. The Court acknowledges that "[t]he general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996)

9

(citations omitted); *see also Bunche v. United States*, 2018 WL 495029, at *9 (6th Cir. June 20, 2018) (Larsen, J., concurring). Still, this is not a case involving the need for expert discovery and it is unclear how additional discovery will aid the Court in consideration of this matter. Callahan has submitted examples of sexually explicit artwork and pictures that are filed in the record under seal. [Rs. 1-1, 1-3]. Additionally, the record contains the official prison policies and declarations from prison officials about the potential threats posed by sexually explicit artwork and depictions in the prison setting.

Here, it is unclear how Callahan's extremely broad requests for additional discovery [*See* R. 21] will add any relevant material that is not already contained in the record. Furthermore, complying with these discovery requests will impose administrative and financial burdens upon the government and Bureau of Prisons. Finally, some of the pictures that were mailed to Callahan were returned to the sender and it is unclear whether any seized artwork still exists. As a result, additional discovery in this matter would be futile.

Overall, prison officials have established that sexually explicit artwork and depictions pose a security threat in the prison setting. Furthermore, the government has a legitimate interest in maintaining order in the prison environment and preventing sexual harassment of other inmates and prison

officials.  Moreover, the presence of sexually explicit artwork may inhibit the rehabilitation of incarcerated individuals, especially those, like Callahan, who were convicted of sex crimes. In light of the foregoing analysis and given the deference that is owed to prison officials as they establish policies and carry out decisions associated with day-to-day prison operations, *see Goldsmith*, 614 F. App'x at 829, Callahan's non-*Bivens* claims regarding inmate art work and mail are unavailing.

Finally, Callahan suggests that prison officials have somehow interfered with his access to this Court.  However, Callahan's allegations on this point are confusing and, as the defendants point out, Callahan does not clearly allege or establish how he has suffered prejudice in the way in which he has had to litigate his claims, as required to make out an access-to-the-court claim. *See, e.g., Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Lewis v. Cook County Bd. of Com'rs*, 6 F. App'x 428, 430 (7th Cir. 2001). Ultimately, this Court has fully considered Callahan's submissions and, thus, his claim that he has been denied access to this Court is simply without merit.

C.

Accordingly, it is hereby **ORDERED** as follows:

1. The defendants' motion to dismiss or, in the alternative, motion for summary judgment [R. 19] is **GRANTED** for the reasons stated in this opinion.

2. All other pending motions are **DENIED** as moot.

3. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

4. The Court will enter a judgment contemporaneously with this order.

This 14th day of February, 2019.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge